Aaron Twersky, Esq.
Ilana Neufeld, Esq.
**Twersky PLLC**
747 Third Avenue, 32nd Floor
New York, New York 10017
(212) 425-0149
atwersky@twerskylaw.com
ineufeld@twerskylaw.com
- *and* -
Avram E. Frisch, Esq.
**The Law Office of Avram E. Frisch LLC**
1 University Plaza, Suite 119
Hackensack, New Jersey 07601
(201) 289-5352
frischa@avifrischlaw.com
*Attorney for Defendants/Counterclaim Plaintiffs Luxe Living Design, LLC and Chaim S. Treitel*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

-----------------------------------------------------------------------------------x
**1735 JERSEY AVE LLC,**

                Plaintiff/Counterclaim Defendant,

      -against-                           Docket No.:
                                                            3:24-cv-06168

**LUXE LIVING DESIGN, LLC
and CHAIM S. TREITEL,**

                Defendants/Counterclaim Plaintiffs.
-----------------------------------------------------------------------------------x
**1735 JERSEY AVE LLC,**

                Plaintiff/Counterclaim Defendant,

     -against-                             Docket No.:
                                                            3:24-cv-06175

**LUXE LIVING DESIGN, LLC
and CHAIM S. TREITEL,**

                Defendants/Counterclaim Plaintiffs.
-----------------------------------------------------------------------------------x

**MEMORANDUM OF LAW OF IN SUPPORT OF THE ORDER TO SHOW CAUSE
<u>FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>**

# **TABLE OF CONTENTS**

**BACKGROUND AND FACTS** ...................................................................................... 1

    **A.** The Lease Agreement And The Roof ................................................................ 2

    **B.** The Lawsuits ..................................................................................................... 4

    **C.** Plaintiff's Improper Self-Help .......................................................................... 4

**LEGAL ARGUMENT**

**POINT I**

**STANDARD OF REVIEW** ............................................................................................ 5

    **A.** Defendants Are Like To Succeed On The Merits ............................................. 6

    **B.** Defendants Are Being Irreparably Harmed ...................................................... 8

    **C.** No Greater Harm to Plaintiff ............................................................................ 9

    **D.** Public Interest Favors Granting The Injunction ............................................... 9

**CONCLUSION** ............................................................................................................. 10

## BACKGROUND AND FACTS

On or about October 23, 2023, Defendants/Counterclaim Plaintiffs Luxe Living Design, LLC and Chaim S. Treitel ("Defendants" or "Tenants") and Plaintiff/ Counterclaim Defendant 1735 Jersey Ave LLC ("Plaintiff" or "Landlord") executed the Lease Agreement, in which Defendants leased a portion of the property located at 1735 Jersey Avenue, North Brunswick, New Jersey ("Premises" or "Property") ("Lease Agreement"). A true and correct copy of the Lease Agreement is attached to the Declaration of Chaim S. Treitel ("Treitel Decl.") as Exhibit A. However, prior to signing the Lease Agreement, in as early as January 2023, Plaintiff assured Defendants that the roof of the Premises would be repaired. *See* Treitel Decl., ¶ 4. It is undisputed that the roof of the Premises was decrepit and in need of repair and even replacement ***prior*** to Defendants taking possession of the Premises. Defendants intended and indeed use the Premises as a storage warehouse for their business. As such, it is vital that the roof be in working condition in order to prevent damage to the stored goods. Due the importance of the roof's condition, items regarding the roof were contemplated and codified in the Lease Agreement.

The Lease Agreement was set to commence on December 1, 2023. However, the parties agreed to commence the Lease Agreement on December 15, 2023. Pursuant to the Lease Agreement, the base rent was $203,939.58 per month ("Base Rent"). Defendant would also be responsible for certain operating expenses and other fees ("Additional Rent"). The parties agreed that the Base Rent would not be charged for the first two months of the lease term, and that Defendants would only be responsible to pay the Additional Rent for those months. Upon execution of the Lease Agreement, Defendants paid an initial security deposit of $500,000.00, as well as $250,000.00, equivalent to one month's rent. An additional $300,000.00 deposit was to

1

be paid two months after Defendant took possession of the Premises.

    A.  **The Lease Agreement And The Roof**

Under the Lease Agreement, the Plaintiff have an obligation to repair the roof prior to the commencement of the lease and to maintain a dry space for the Defendants. In Section 2.01, the Lease Agreement states:

> Prior to the Commencement Date, ***Landlord shall repair any and all existing and/or active roof leaks above the Premises so that the Premises are fully dry***. Further, Landlord shall repair the roof as needed and represents that it will (in a timely manner) or has engaged a licensed contractor to do same.

*See* Exhibit A, Lease Agreement, Section 2.01 (emphasis added). Section 2.01 makes clear that Plaintiff was to deliver a space that was free of leaks in the roof, and that Plaintiff would be responsible to repair the roof "as needed." *See* Exhibit A, Lease Agreement, Section 2.01. Moreover, Section 11.01 of the Lease Agreement speaks further about maintenance of the Roof, and specifically places the complete responsibility of all Roof repairs on the Landlord for at least the first nine months of the tenancy. This section also places the obligation of any complete roof replacement on the Landlord and states,

> For the avoidance of ambiguity, ***in the event that the [Premises]'s roof requires replacement at any time throughout the Term, Landlord shall be solely responsible for such replacement***, which replacement shall be deemed a capital improvement consistent and in compliance with section 4.01(h) of this Lease.

*See* Exhibit A, Lease Agreement, Section 11.01 (emphases added).

This provision was included to induce the Defendants to sign the Lease Agreement. However, even on December 12, 2023, there were leaks in the Roof which Landlord promised it was "fixing."

Believing Plaintiff's statements that everything was in order and there were no

2

problems with the roof or the Premises, on or about December 15, 2024, Defendants began to move items into the Premises. However, upon beginning to move into the Premises, Defendants discovered significant leaks in the roof and therefore was forced to halt moving into the Premises. Since there was extensive leaking, Defendants were unable to finish moving into the Premises or use it fully. Defendants communicated with Landlord extensively regarding the leaks and the necessity of fixing the Roof, which under the Lease Agreement, was Landlord's sole responsibility. *See* Exhibit A, Lease Agreement, Sections 2.01 and 11.01. The Plaintiff repeatedly promised to fix the leaks in the roof, as required under the Lease Agreement, but leaks still persisted.

Specifically, on December 20, 2023, Tenant asked Landlord "[w]hat's the plan with the roof . . . [c]overing the le[a]ks for now . . . isn't going to work long term." *See* Treitel Decl., ¶ 5. Again, on January 18, 2024, Tenant notified Landlord of more leaks and asked when the full repairs would be done. Landlord did not respond. *See* Treitel Decl., ¶ 6. On January 28, 2024, Tenant told Landlord, "As of today there are still leaks in the roof and we have not see[n] anyone working in the past week," despite Landlord's assurance that "[w]e signed contract to replace roof already . . . All the roof will be replaced." *See* Treitel Decl., ¶ 7. During this time, Defendants were unable to fully move into the Premises and had to continue to use its prior space and pay rent for it. *See* Treitel Decl., ¶ 8.

Finally, on or about March 15, 2024, after being assured that the repairs were complete and the roof was fixed, Defendants resumed moving into the Premises, by putting in shelving and moving more items into the Premises. *See* Treitel Decl., ¶ 9. However, the Plaintiff had not properly repaired the roof and the roof continues to leak and damage Defendants' property. As a result, Defendants did not remit full payment of the rent since the Premises was not workable.

### B. The Lawsuits

On or about May 10, 2024, Plaintiff sought a judgment of possession and to remove the Defendants from the Premises (the "L&T Action"). On or about May 15, 2024, Plaintiff filed a complaint against Defendants for breach of the Lease Agreement, promissory estoppel, unjust enrichment and breach of personal guaranty (the "Lease Action"). *See* D.E. 1. Similarly, on or about May 15, 2024, the Defendants filed a notice to remove the L&T Action to this Court. Since that time, Magistrate Judge Tonianne J. Bongiovanni ("Judge Bongiovanni") has been working with the parties to create a resolution. On or about September 19, 2024, the parties met with Judge Bongiovanni for a status conference where the parties were informed that Judge Bongiovanni would be away for an extended period of time for vacation. Suspiciously, immediately after Plaintiff was informed of this, Plaintiff began to take matters into their own hands and engaged in inappropriate self-help.

### C. Plaintiff's Improper Self-Help

On or about September 25, 2024, Plaintiff blocked the entrance to the Premises using trucks and trailers. *See* Treitel Decl., ¶ 11. Plaintiff also hired guards to physically prevent Defendants from entering the Premises. *See* Treitel Decl., ¶ 12. Since September 25, 2024, Plaintiff has also shut off the power to the Premises. *See* Treitel Decl., ¶ 13. Plaintiff initially chose to go to the Court for relief by filing a lawsuit, ***but has now decided to engage in unlawful self-help***. Plaintiff seemingly chose to this on advice of counsel. *See* a true and correct copy of Attorney Jonathan Ozarow's Letter, attached as Exhibit B to the Treitel Decl.

Under the Lease Agreement, Section 18.03 (b) Remedies the Plaintiff is "[t]o the extent permitted by Law . . .re-enter the Premises…***either*** by self-help…***or*** any suitable action or proceeding at law . . . " *See* Lease Agreement, Exhibit A. Instead, Plaintiff initially went to this

4

Court for relief and subsequently engaged in unlawful self-help. Plaintiff is using intimidation and harassment as a means of relief instead of waiting and respecting the judicial process. ***Accordingly, Plaintiff must stop its unlawful and harassing behavior and adhere to the judicial process it selected***. **To date, Plaintiff has received approximately $1.3 Million in rent from Defendants**. *See* Treitel Decl., ¶ 10. Therefore, the Motion must be granted and the Premises must be immediately returned to the Defendants.

## LEGAL ARGUMENT

### POINT I

### STANDARD OF REVIEW

The decision to grant a preliminary injunction rests with the District Court. In determining a preliminary injunction, the Court must consider the following elements: (1) a reasonable probability of success on the merits; (2) irreparable injury to the moving party; (3) harm to the nonmoving party; and (4) the public interest. *See Silvertop Assocs., Inc. v. Kangaroo Mfg., Inc.,* 319 F. Supp. 3d 754, 761 (D.N.J. 2018). The purpose of a preliminary injunction is to maintain status quo until a decision on the merits of a case can be rendered. *See Nekirlov v. City of Jersey City,* 528 F.Supp.3d 252 (D. N.J. 2021). When the requested relief is truly just maintaining status quo to avoid the subject matter of the litigation from being destroyed or substantially impaired, then a "less than exacting showing" is permissible." *Waste Management of New Jersey, Inc. v. Union County Utilities Authority*, 399 N.J.Super. 508, 534-535 (App. Div. 2008).

The factors required in a true status quo situation "are not to be looked upon as hard and fast and sharply defined in scope; rather they are but factors, among others, which must be weighed, one with another, all going to the exercise of an exacting judicial discretion as to

5

whether or not to issue a preliminary injunction." *Waste Management of New Jersey, Inc. v. Union County Utilities Authority, supra*, 399 N.J.Super. at 534-535. Even if a case has questionable likelihood of success on the merits, it can still support entry of a preliminary injunction, limited to preserving the status quo, "so long as the harm confronting the movant is great and irreparable, and the hardship imposed on the opponent is not terribly significant or . . . maybe secure through the imposition of some form of security or through the imposition of other equitable terms." *Id.* at 535.

### A. Defendants Are Likely to Succeed on the Merits

As is described above, Plaintiff is using self-help to prevent Defendants from accessing the Premises. ***Plaintiff has no order from the Court allowing it to take possession of the Premises***. Rather, Plaintiff asserts, via correspondence not filed, that it has the right to use self-help pursuant to the terms of the Lease. This is incorrect for multiple reasons.

First, a lease provision allowing self-help, ***by force***, is not permitted under New Jersey law. "Where a lease contains a provision permitting the lessor to re-enter and retake possession of the demised premises upon breach by the lessee of any of the covenants of the lease, the lessor may not, although such breach of covenant has been made, re-enter and retake possession by force, even though only such force is used as is necessary to expel the lessee." § 29.3. Election of Remedies, 23 N.J. Prac., Landlord And Tenant Law § 29.3 (5th edition).

As N.J.S.A. 2A:39-1 makes clear, "[n]o person shall enter upon or into any real property or estate therein and detain and hold the same, except where entry is given by law, and then ***only in a peaceable manner***." (emphasis added). The authority for the legislature to outlaw forcible self-help by landlords has been upheld. For instance, in *Zankman v. Tireno Towers*, 121 N.J. Super. 346 (Dist. Ct. 1972), the lease between the parties provided that the landlord could change

6

the tenant's locks and take possession of the premises in the event of any default in the terms of the lease. The court there rejected landlord's actions in locking out the tenant, noting that: "[a] landlord may not provide in his lease to do that which the law forbids. Statutes suspending or restricting a landlord's remedy to recover possession of leased premises from the tenant are a legitimate exercise of the police power of the State." *Id*. at 348. Though *Zankman v. Tireno Towers* concerned a residential lease, the rationale applies to commercial leases as well. Moreover, N.J.S.A. 2A:39-1 is not confined to commercial leases. ***In sum, the law against forcible entry applies and a landlord may not take possession of a Premises without a Court order***.

      In Plaintiff's letter, it relies on *Liqui-Box Corp. v. Est. of Elkman*. That case references the use of self-help, pursuant to a lease, which provided, "if the tenant vacated or abandoned the premises for a period of 30 days, then the landlord could, at its election, reenter and repossess the premises with or without process of law and remove the tenant without such reentry and repossession." *Liqui-Box Corp. v. Est. of Elkman*, 238 N.J. Super. 588, 600 570 (App. Div. 1990); *see also* Exhibit B. In other words, there plaintiff was entitled to take possession of an abandoned property. By definition this is a peaceful. This is strikingly dissimilar to the facts here.

      In this case, Plaintiff has hired security guards to physically restrain and intimidate Defendants from entering the property. In doing so, Plaintiff is holding Defendants' merchandise and entire business hostage. Plaintiff's actions were meant to agitate, harass, intimidate and harm the Defendants. Clearly, Plaintiff's "self-help" is not in a "***peaceable manner***" of entering a property. *See* N.J.S.A. 2A:39-1. Accordingly, Plaintiff's actions bear no resemblance to the facts outlined in *Liqui-Box Corp. v. Est. of Elkman*. Plaintiff's comparison is

7

without any merit and is used as a pretext to exonerate Plaintiff's obvious and willful wrongdoings.

In addition, even if N.J.S.A. 2A:39-1 did not disallow entry into the Premises in this case, the language of the lease does not allow it either. Section 18.03 of the lease allows the landlord to "re-enter the Premises . . . *either* by self-help . . . *or* to seek a court order by summary dispossess proceeding." In other words, **the landlord could choose one course of action or the other**. In this case, the landlord brought this action, in court, seeking entry into the Premises. Pursuant to the terms of the lease, that election foreclosed using self-help and seeking any other remedy.

Therefore, Defendant has a significant chance of success on the merits as, both the law and the terms of the lease prohibit Plaintiff's actions.

### B. Defendants Are Being Irreparably Harmed

Defendants' inability to access the Property here substantially and irreparably harms their business. Defendants are in the business of furniture rentals for high end events, and stores all of their items in the warehouse. *See* Treitel Decl., ¶ 14. Due to the nature of this business, items are taken in and out on a regular basis. *See* Treitel Decl., ¶ 15. Without the ability to access the warehouse and the items stored there, Defendants' business is essentially unable to function. *See* Treitel Decl., ¶ 16. This is clearly irreparable harm.

"The loss of business and goodwill, and the threatened loss of the enterprise itself, constitute irreparable injury to the plaintiff sufficient to justify the issuance of preliminary injunction." *Marine Electric Systems, Inc. v. MES Financing, LLC*, 644 F. Supp. 3d 84, 95 (D. N.J. 2022); *see also Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1205 (2d. Cir. 1970). Loss of this nature - including loss of jobs, customers, and operations - is "not measured

entirely in monetary terms." and so constitutes irreparable injury. *Semmes Motors Inc. v. Ford Motor Co.*, *supra*, 429 F.2d at 1205 (right to continue business that has been in operation for 20 years is not measurable in monetary terms). Here, because Defendants and their business cannot function as a business if they are excluded from the warehouse, there is no question that Defendants will have irreparable if the Court does not issue a preliminary injunction.

C. **No Greater Harm to Plaintiff**

Here, Plaintiff will not be harmed if the injunction is not granted. There is currently a dispute regarding the warehouse. The roof was not replaced as Plaintiff guaranteed when the parties entered the lease. This is causing constant damage to Defendants, due to leaks in the roof. Considering the dispute between the parties, Plaintiff's inability to exclude Defendants from the Property will not cause any harm to Plaintiff, which Plaintiff essentially concedes by bringing this lawsuit. Plaintiff is entitled to the results of this lawsuit, not to use self-help prior to the conclusion of the lawsuit.

D. **Public Interest Favors Granting the Injunction**

As is noted above, the legislature passed N.J.S.A. 2A:39-1 to prevent situations such as the one here. Allowing Plaintiff to proceed in direct violation of the law is not in the public interest. Similarly, N.J. Stat. Ann. § 2A:39-2 provides:

> If any person shall enter upon or into any real property and detain or hold the same with force, whether or not any person be in it, by...such words, circumstances or action as have a natural tendency to excite fear or apprehension of danger, or by putting out of doors, or carrying away the goods of the party in possession, or by entering peaceably and then, by force or frightening by threats, or by other circumstances of terror, turning the party out of possession, such person shall be guilty of a forcible entry and detainer within the meaning of this chapter.

In this case, Plaintiff hired people to physically force Defendants to not enter the Property. Plaintiff put up a wall of trucks to stop Defendants from accessing the Property.

9

Plaintiff, through counsel, has threatened Defendants to stop him from entering the Property. Pursuant to N.J. Stat. Ann. § 2A:39-2, Plaintiff is guilty of forcible entry and detainer. Certainly, an injunction stopping Plaintiff from violating this statute is also in the public interest. Therefore, Defendants have satisfied all four elements to justify the granting of the requested preliminary injunction.

## CONCLUSION

For the foregoing reasons, Defendants/Counterclaim Plaintiffs Luxe Living Design, LLC and Chaim S. Treitel respectfully request that the Court: a) grant their Motion for Preliminary Injunction in its entirety; b) pursuant to Fed. R. Civ. P R. 64 and R. 65 restoring the Defendants to possession of the leased premises at 1735 Jersey Avenue, North Brunswick, New Jersey; c) prohibiting the Plaintiff from interfering with the possession of the leased premises during the course of this litigation; d) prohibiting Plaintiff from interfering with the operation of the premises, including cutting off any necessary utility access, blocking access to loading docks, or other steps taken to interfere with Defendants' business at the premises; e) prohibiting Plaintiff from engaging in any self-help to achieve an eviction; and f) such other and further relief as the Court deems just and proper.

Dated: New York, New York
September 27, 2024

                                               **TWERSKY PLLC**

By: _/s/ Aaron Twersky_
Aaron Twersky, Esq.
Ilana Neufeld, Esq.
747 Third Avenue, 32nd Floor
New York, New York 10017
(212) 425-0149
atwersky@twerskylaw.com
ineufeld@twerskylaw.com

10

*Attorneys for Defendants Luxe Living Design, LLC and Chaim S. Treitel*

To:

All Counsel (via ECF)