Aaron Twersky, Esq.
Ilana Neufeld, Esq.
**Twersky PLLC**
747 Third Avenue, 32nd Floor
New York, New York 10017
(212) 425-0149
atwersky@twerskylaw.com
ineufeld@twerskylaw.com
*- and -*
Avram E. Frisch, Esq.
**The Law Office of Avram E. Frisch LLC**
1 University Plaza, Suite 119
Hackensack, New Jersey 07601
(201) 289-5352
frischa@avifrischlaw.com
*Attorney for Defendants/Counterclaim Plaintiffs Luxe Living Design, LLC and Chaim S. Treitel*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

------------------------------------------------------------------------------x

**1735 JERSEY AVE LLC,**

                    Plaintiff/Counterclaim Defendant,

         -against-                              Docket No.:
                                                      3:24-cv-06168

**LUXE LIVING DESIGN, LLC**
**and CHAIM S. TREITEL,**

                    Defendants/Counterclaim Plaintiffs.

------------------------------------------------------------------------------x

**1735 JERSEY AVE LLC,**

                      Plaintiff/Counterclaim Defendant,

         -against-                              Docket No.:
                                                      3:24-cv-06175

**LUXE LIVING DESIGN, LLC**
**and CHAIM S. TREITEL,**

                    Defendants/Counterclaim Plaintiffs.

------------------------------------------------------------------------------x

**MEMORANDUM OF LAW OF IN REPLY AND FURTHER**
**SUPPORT OF THE ORDER TO SHOW CAUSE FOR**
<u>**TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**</u>

## **TABLE OF CONTENTS**

**INTRODUCTION**.................................................................................................................. 1

**LEGAL ARGUMENT**

**STANDARD OF REVIEW** ................................................................................................... 2

    **A.** Defendants Are Likely To Succeed On The Merits................................................ 3

    **B.** Defendants Are Being Irreparably Harmed ............................................................ 5

    **C.** There Is No Greater Harm To Plaintiff................................................................... 6

    **D.** The Public Interest Favors Granting The Injunction, And
        The Balance Of The Equities Weighs In Favor Of Defendants............................. 7

    **E.** There Bond Should Not Be Increased ................................................................... 8

**CONCLUSION** ..................................................................................................................... 10

## INTRODUCTION

As this Court is aware, this action involves a Lease Agreement for a portion of the property located at 1735 Jersey Avenue, North Brunswick, New Jersey ("Premises" or "Property"), between Defendants/Counterclaim Plaintiffs Luxe Living Design, LLC and Chaim S. Treitel ("Defendants" or "Tenants") and Plaintiff/ Counterclaim Defendant 1735 Jersey Ave LLC ("Plaintiff" or "Landlord") ("Lease Agreement"). On or about September 27, 2024, Defendants sought and were granted a temporary restraining order, due to Plaintiff's illegal and improper use of self-help. The Court is reminded that on or about September 25, 2024, Plaintiff blocked the entrance to the Premises using trucks and trailers, and also hired guards to physically prevent Defendants from entering the Premises. *See* PACER Doc. 18-2, Declaration of Chaim Treitel, ¶¶ 11-12.[1] Plaintiff had also shut off the power to the Premises. *See* PACER Doc. 18-2, Declaration of Chaim Treitel, ¶ 13. Plaintiff's unlawful self-help led to Defendants' business essentially being unable to function during that time. *See* PACER Doc. 18-2, Declaration of Chaim Treitel, ¶¶ 14-16.

As explained in the moving papers, under the Lease Agreement, Plaintiff can "[t]o the extent permitted by Law . . .re-enter the Premises…***either*** by self-help…***or*** any suitable action or proceeding at law . . . " *See* PACER Doc. 18-3, Lease Agreement, Section 18.03 (b). However, Plaintiff initially chose to come to this Court for relief, on or about May 10, 2024, and then subsequently, over four months later, engaged in unlawful self-help, presumably because it did not like how the Court was handling the matter. The Court has already found Plaintiff's self-help was improper and granted Defendants' Temporary Restraining Order ("TRO"). *See* PACER Doc. 20, Temporary Restraining Order. Defendants now file this Memorandum of Law

---

[1] All references to PACER Document Numbers refer to Docket No. 3:24-cv-06175.

1

in Reply and Further Support of its initial Order to Show Cause, and for the reasons stated in the moving papers and below, the temporary restraints in the TRO must be kept in place and a Preliminary Injunction must be issued for the duration of this action.

## LEGAL ARGUMENT

## STANDARD OF REVIEW

The District Court granted the TRO, by considering the necessary elements, including: (1) a reasonable probability of success on the merits; (2) irreparable injury to the moving party; (3) harm to the nonmoving party; and (4) the public interest. *See Silvertop Assocs., Inc. v. Kangaroo Mfg., Inc.,* 319 F. Supp. 3d 754, 761 (D.N.J. 2018).  Now, a preliminary injunction should be granted, to maintain status quo until a decision on the merits of a case can be rendered. *See Nekirlov v. City of Jersey City,* 528 F.Supp.3d 252 (D. N.J. 2021).  It is proper to grant a preliminary injunction to preserve the status quo, "so long as the harm confronting the movant is great and irreparable, and the hardship imposed on the opponent is not terribly significant or . . . maybe secure through the imposition of some form of security or through the imposition of other equitable terms." *Waste Management of New Jersey, Inc. v. Union County Utilities Authority*, 399 N.J.Super. 508, 535 (App. Div. 2008).  In this matter, the District Court properly determined that Defendants are likely to succeed on the merits, are being irreparably harmed, Plaintiff is not being harmed by the injunction and the public interest favors the TRO and injunction.  *See* PACER Doc. 20, Temporary Restraining Order.  Additionally, once the TRO was granted, a large bond was ordered and obtained by Defendants.  *See* PACER Doc. 37, Bond.[2]  Nothing has changed in this matter to necessitate the lifting of the TRO and at this juncture, a preliminary

---

[2] While Plaintiff wastes space in its Supplemental Memorandum of Law claiming that "Tenant failed to post the bond as ordered by the Court," this is demonstrably false.  *See* PACER Doc. 42, Plaintiff's Supplemental Memorandum of Law in Opposition, p. 8.  While it was initially difficult for Defendants to obtain such a large bond, Defendants sought an extension of time to obtain the bond when needed and followed all Court orders and

injunction should be put in place to continue to protect Defendants from Plaintiff's improper use of self-help and other unlawful whims. Certainly, the $350,000.00 bond in place will "protect" Plaintiff from anything which may occur due to an injunction being granted.

### A. Defendants Are Likely To Succeed On The Merits

In its first opposition to the Order to Show Cause, Plaintiff argued that Defendants did not have a likelihood of success on the merits because the Lease Agreement allows for self-help. While the Lease Agreement may allow for self-help under certain circumstances, the Court found that it was not allowed in the way Plaintiff proceeded. Nevertheless, Plaintiff did not and has never disputed that self-help is not permitted under the law and that a lease term allowing self-help is therefore void. For instance, Defendant does not dispute that N.J.S.A. 2A:39-1 governs and prohibits self-help. *See* N.J.S.A. 2A:39-1 ("[n]o person shall enter upon or into any real property or estate therein and detain and hold the same, except where entry is given by law, and then ***only in a peaceable manner***") (emphasis added).

Plaintiff does not argue that its "self-help" was in a "peaceable manner" of entering a property, which is what the statute allows for. *See* N.J.S.A. 2A:39-1. Plaintiff also does not dispute that there is ***ample authority stating a self-help clause in a lease is not valid***. *See Zankman v. Tireno Towers*, 121 N.J. Super. 346 (Dist. Ct. 1972) ("[a] ***landlord may not provide in his lease to do that which the law forbids***. Statutes suspending or restricting a landlord's remedy to recover possession of leased premises from the tenant are a legitimate exercise of the police power of the State") (emphasis added). In its first opposition and its supplemental briefing, Plaintiff offers no explanation as to how, given this authority, relying on Section 18.03

---

directives. Defendants also choose not to respond to Plaintiff's disrespectful description of Defendant's inability to work on Yom Kippur, the holiest day of the year for Jewish people, and the time leading up to it and immediately after. Like most of Plaintiff's papers, this insult and entire section is immaterial and not relevant.

(b) of the Lease Agreement is appropriate or allows for what Plaintiff did. Thus, Plaintiff's entire argument that its actions were appropriate because the Lease Agreement allows for it must be rejected outright by the Court, as it is uncontroverted that the law does not allow for self-help.

In its Supplemental Memorandum of Law in Opposition, Plaintiff focuses on the issue that it may win a right to eviction at the end of this case. *See* PACER Doc. 42, Plaintiff's Supplemental Memorandum of Law in Opposition, p. 3. Though Defendants contest that assertion, it is also the wrong argument to be focused on. Plaintiff does not explain how, even if it does eventually prevail on its claim for eviction, that is a reason to lift the TRO and injunction here, and allow for illegal self-help prior to receiving that eviction.

Similarly, Plaintiff also wrongly focuses on the idea that Defendants may eventually vacate "and abandon the Premises as soon as it can find alternative space," which would lead to harm. *See* PACER Doc. 42, Plaintiff's Supplemental Memorandum of Law in Opposition, p. 5-7. This argument is an incorrect argument to focus on, and is also a hypothetical based on a hearsay statement of what Plaintiff heard from someone else.[3] Despite what Plaintiff claims, this is an inappropriate basis to claim irreparable harm. *See Brennan v. William Paterson Coll.*, 2011 WL 13192892, at *1 (D.N.J. Nov. 3, 2011) (To establish irreparable harm "the plaintiff must demonstrate that he has 'sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical' "), quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). Further, "a plaintiff seeking an injunction must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical." *Tineo v. Fed. Bureau of Prisons*, 2021 WL

---

[3] The Court is also reminded that upon information and belief, Plaintiff is currently in contract to sell the Property, with a closing happening imminently.

4

689144, at *5 (D.N.J. Feb. 23, 2021), quoting *Marcavage v. Nat'l Park Serv.*, 666 F.3d 856, 862 (3d Cir. 2012).  In the same vein, a party opposing an injunction based on the idea that they will be injured more than the moving party, must show that the proposed injury is more than hypothetical.  Plaintiff does nothing of the sort here.

Moreover, even if a hearsay, hypothetical harm could form the basis for a valid argument, it would still fail here, where Plaintiff is currently seeking to evict Defendants.  It is unclear how it is inappropriate for Defendants to seek an alternative place to rent, while its current Landlord, the Plaintiff, is seeking to evict them.  What it seems is, Plaintiff does not truly want to evict Defendants.  Rather, Plaintiff wants to be able to engage in self-help and place locks on the Premises where Defendants' chattels are held, so as to be able to use that as leverage in this overall matter, and in the dispute regarding the appropriate rent payment, considering the roof, which was supposed to be replaced before Defendants moved in, was not and was instead constantly leaking and never repaired.[4]  It is clear that Plaintiff is not being harmed by the TRO in place and an injunction is necessary to prevent Defendants from being harmed.

**B. <u>Defendants Are Being Irreparably Harmed</u>**

Defendants' inability to access the Property substantially and irreparably harms their business, as the Court agreed in granting the TRO.  *See* PACER Doc. 20, Temporary Restraining Order.  Defendants are in the business of furniture rentals for high end events, and stores all of their items in the warehouse.  *See* PACER Doc. 18-2, Declaration of Chaim Treitel, ¶ 14.  Due to the nature of this business, items are taken in and out on a regular basis.  *See* PACER Doc. 18-2, Declaration of Chaim Treitel, ¶ 15.  Without the ability to access the warehouse and the items

---

[4] Defendants do not dispute that work has begun on the roof.  However, Plaintiff's entire narrative surrounding this repair in its Supplemental Memorandum of Law in Opposition is once again irrelevant, as this supplemental briefing is tied to the Order to Show Cause, TRO and preliminary injunction, and not anything else.

5

stored at the Property, Defendants' business is essentially unable to function. *See* PACER Doc. 18-2, Declaration of Chaim Treitel, ¶ 16. This is clearly irreparable harm.

"The loss of business and goodwill, and the threatened loss of the enterprise itself, constitute irreparable injury to the plaintiff sufficient to justify the issuance of preliminary injunction." *Marine Electric Systems, Inc. v. MES Financing, LLC*, 644 F. Supp. 3d 84, 95 (D. N.J. 2022); *see also Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1205 (2d. Cir. 1970). Loss of this nature - including loss of jobs, customers, and operations - is "not measured entirely in monetary terms" and so constitutes irreparable injury. *Semmes Motors Inc. v. Ford Motor Co.*, *supra*, 429 F.2d at 1205 (the right to continue business that has been in operation for 20 years is not measurable in monetary terms).

In opposition to these uncontroverted facts and law, Plaintiff does not argue that Defendants would not be irreparably harmed, nor does Plaintiff discuss any of the above authority. Thus, it is uncontradicted that Defendants will be irreparably harmed absent the continuation of the TRO and the granting of an injunction. Accordingly, the restraints must be kept in place and a temporary injunction granted for the duration of this matter.

### C. There Is No Greater Harm To Plaintiff

Here, Plaintiff will not be harmed if the injunction is granted. As the Court knows, there is currently a dispute between the parties regarding the Property and the Lease Agreement. The roof of the Property was not replaced before Defendants moved into the Property, as they were promised and which Plaintiff guaranteed when the parties entered into the Lease Agreement. The constant leaking of the roof causes constant damage to Defendants. Considering this dispute, Plaintiff's inability to exclude Defendants from the Property will not cause any harm to Plaintiff, which Plaintiff has essentially already conceded by bringing this lawsuit. Plaintiff is

entitled to the results of this lawsuit, not to use self-help prior to the conclusion of the lawsuit. Additionally, the Court has set the rent amount to be paid, $224,000.00, which Defendant is paying monthly. *See* PACER Text Order dated 11/7/2024. This amount is near the rent contemplated in the Lease Agreement, and therefore, since Plaintiff is receiving this amount each month, it is not being harmed.

In its Supplemental Memorandum of Law in Opposition, Plaintiff argues it is being irreparably harmed by not having possession of the Property. *See* PACER Doc. 42, Plaintiff's Supplemental Memorandum of Law in Opposition, p. 3. However, this argument is circular, as Defendants are Plaintiff's Tenants and Plaintiff does not have an order for possession of the Property. Plaintiff is essentially arguing that it is being irreparably harmed by not being able to use self-help, even though the law does not allow Plaintiff to use self-help, as extensively shown above. Plaintiff cites no authority for the position that the failure to be able to do something the law does not allow, constitutes irreparable harm. Plaintiff's entire supplemental briefing is mixing apples and oranges, and does nothing to show that the TRO or an injunction is improper in this case.

### D. The Public Interest Favors Granting The Injunction, And The Balance Of The Equities Weighs In Favor Of Defendants

In the initial moving papers, Defendants explained clearly how the public interest is served by granting the injunction. There is no dispute that by engaging in self-help in the way that it did, Plaintiff violated the New Jersey forcible entry statutes. Certainly, an injunction stopping Plaintiff from further violating these statutes is also in the public interest. The TRO was properly granted and must be maintained, and a preliminary injunction must also be granted.

Plaintiff argues that the public interest does not favor maintaining the TRO or a preliminary injunction, and that the balance of the equities favors it, because it took Defendants

7

time to post the bond (though it did post the hefty bond, timely), and that the parties could not agree on the appropriate monthly rent, so the Court set an amount in between what the parties discussed. It is unclear how these previous issues tip the equities in Plaintiff's favor, and Plaintiff declines to offer an explanation as to how they do. This is just yet another example of Plaintiff raising irrelevancies, in a likely attempt to confuse the Court.[5] To be clear again, Plaintiff is asking the Court to lift the injunction so that it may conduct an illegal activity.

### E. The Bond Should Not Be Increased

Plaintiff also asks for the bond in this matter to be increased. *See* PACER Doc. 42, Plaintiff's Supplemental Memorandum of Law in Opposition, p. 9-10. However, Defendants have posted a large bond in the amount of $350,000.00, which should not be disturbed, and if anything should be lessened, as the Defendants are now paying near full rent. *See* PACER Text Order dated 11/7/2024.

The Court set a bond which Defendant posted as part of the TRO. In Plaintiff's Supplemental Memorandum of Law in Opposition, Plaintiff does not argue that the bond amount was inappropriate because it insufficiently covered the rent. Rather, Plaintiff argues that the bond should be increased due to another issue, because of an alleged failure to procure insurance. *See* PACER Doc. 42, Plaintiff's Supplemental Memorandum of Law in Opposition, p. 9-10.

---

[5] In another blatant attempt to divert attention to its own inability to oppose the motion at hand, Plaintiff's attorney includes admissions of impropriety and disparaging statements regarding Defendants' attorney, in his supplemental declaration. In the Declaration of Jonathan A. Ozarow, PACER Doc. 42-3, Mr. Ozarow admits to reading an email which was sent in error to him and which contained attorney-client privileged information, and further admits to using that privileged information in a strategic manner, instead of destroying it. *See* Declaration of Jonathan A. Ozarow, PACER Doc. 42-3, ¶ 3, fn. 1. Mr. Ozarow also goes on to claim that Defendants' counsel "has a history of offering false statements to Courts, which conduct resulted in a New Jersey State Court denying him *pro hac vice* admission and holding him in contempt." *See* Declaration of Jonathan A. Ozarow, PACER Doc. 42-3, ¶ 3, fn. 2. However, this statement is utterly false and a further red herring and personal attack against Defendants' counsel, with no support or basis in the facts. In any case, though completely irrelevant, since that time Mr. Twersky, Defendants' lead counsel, has been admitted to the New Jersey Stae Bar, and no longer has to rely on *pro hac vice* admission.

However, once again Plaintiff is mixing in things that should not be included here, and are unrelated to the matter at hand, in order to confuse the issues. However, even if appropriate or relevant, the case Plaintiff relies on for this assertion is not on point. *Gray v. Chamoro* notes that, "where a tenant breaches a contractual obligation to procure insurance providing coverage for the landlord, the tenant is " 'liable for the losses sustained by the landlord flowing from that breach.' " *Gray v. Chamoro*, 2022 WL 853375, at *6 (N.J. Super. Ct. App. Div. Mar. 23, 2022), quoting *Antenucci v. Mr. Nick's Mens Sportswear* 212 N.J. Super. 124, 131 (App. Div. 1986).

Defendants have procured all of the necessary insurance policies under the Lease Agreement, aside from one, **which it is unable to get**. The insurance at issue is "a policy of rental value insurance covering Rent for a period of one year, with loss payable to Landlord." Such a policy generally benefits a landlord, and covers if there is an event causing damage to a property which would prevent the premises from being rented. In this case, the roof issue is preexisting and would not be covered by such a policy. Therefore, Plaintiff has not sustained any loss flowing from any alleged breach, so such a policy would not cover Plaintiff here. Importantly, ***Plaintiff does not claim to have sustained any loss flowing from the breach***.

Nevertheless, Defendant has sought to obtain such a policy, in order to satisfy Plaintiff's outlandish demands. Defendant has been advised by multiple insurance underwriters and agencies that ***they, as Tenants, cannot obtain such a policy because it does not have an insurable interest***. Though this may have been a term in the Lease Agreement, ***it was clearly drafted in error, as this is not an insurance policy which a tenant is able to obtain***. Thus, Defendants asked Plaintiff, who does have an insurable interest, to participate in good faith in trying to obtain such a policy, which Defendants would then pay the premiums for. Plaintiff initially refused to discuss obtaining such a policy. Therefore, Plaintiff's request for a larger

9

bond due to this insurance policy issue, must be denied both because Defendants stands ready to obtain the policy and because Plaintiff has suffered no loss as a result of not having the policy.

Accordingly, as shown above and in the original moving papers, Defendants have satisfied all four elements to justify the maintenance of the TRO and the granting of the requested preliminary injunction. For these reasons, the relief must be granted, the TRO must be held in place and the Court should grant a preliminary injunction for the duration of this matter.

## CONCLUSION

For the foregoing reasons, Defendants/Counterclaim Plaintiffs Luxe Living Design, LLC and Chaim S. Treitel respectfully request that the Court: a) grant their Motion for Preliminary Injunction in its entirety; b) pursuant to Fed. R. Civ. P R. 64 and R. 65 restoring the Defendants to possession of the leased premises at 1735 Jersey Avenue, North Brunswick, New Jersey; c) prohibiting the Plaintiff from interfering with the possession of the leased premises during the course of this litigation; d) prohibiting Plaintiff from interfering with the operation of the premises, including cutting off any necessary utility access, blocking access to loading docks, or other steps taken to interfere with Defendants' business at the premises; e) prohibiting Plaintiff from engaging in any self-help to achieve an eviction; and f) such other and further relief as the Court deems just and proper.

Dated: New York, New York
December 6, 2024

           **TWERSKY PLLC**

By: _____
Aaron Twersky, Esq.
Ilana Neufeld, Esq.
747 Third Avenue, 32nd Floor
New York, New York 10017
(212) 425-0149
atwersky@twerskylaw.com

10

ineufeld@twerskylaw.com

*Attorneys for Defendants Luxe Living Design, LLC and Chaim S. Treitel*

To:

All Counsel (via ECF)