

## CLARK GULDIN
### ATTORNEYS AT LAW

jozarow@clarkguldin.com
*Reply to: MONTCLAIR*
*Direct Dial: 973-604-3200*

May 15, 2026

**Via PACER**

Honorable Justin T. Quinn, U.S.M.J.
United States District Court
 for the District of New Jersey
402 East State Street
Trenton, NJ  08608

> **Re:**    *1735 Jersey Ave LLC v. Luxe Living Design, LLC, et al.*
> **Case No. 3:24-cv-06168-MAS-JTQ**
>
> *1735 Jersey Ave LLC v. Luxe Living Design, LLC*
> **Civil Action No. 3:24-cv-06175-MAS-JTQ**

Dear Magistrate Judge Quinn:

This firm represents 1735 Jersey Ave LLC ("Jersey") in the above-referenced actions.  Please allow this letter to serve as a request, pursuant to Local Civil Rule 37.1 and Your Honor's Case Management Order, to address ongoing discovery deficiencies of Defendants, Luxe Living Design, LLC and Chaim S. Treitel (collectively, "Defendants").

**EFFORTS TO RESOLVE VIA MEET AND CONFER**

Mr. Treitel was asked about Defendants' responses (or rather the lack thereof) to Jersey's document demands and interrogatories, to which Mr. Treitel advised he was

Honorable Justin T. Quinn, U.S.M.J.
May 15, 2026
Page 2

unaware of any responses.  I followed up by email on April 20, 2026[1] (Ex. A) and, in response thereto, Defendants provided a copy of their discovery responses (Id., at p 1). Following Defendants' non-answer as to outstanding interrogatories, Jersey requested permission to file a motion and/or having the Court order Defendants answer interrogatories.  (ECF 106.)  Shortly thereafter Defendants' counsel provided answers to interrogatories.  Upon review of the interrogatories, Jersey advised that it wanted to meet and confer given apparent deficiencies.

On April 30, 2026, Jersey and Defendants met and conferred to discuss Defendants' discovery responses for an hour.  Defendants appeared unprepared to discuss in any level of detail advising time and again that it would take Jersey's comments under consideration and supplemental responses, if any, would be provided in two weeks.  Defendants then asked for an additional day.  Jersey advised that it would provide until May 15, 2026, and later advised that supplemental responses should be received no later than noon on that date.  This was also memorialized in email correspondence, which speaks for itself.  (Ex. B.)

---

[1] In yet another example of Defendants' creative license with the Court, Defendants' April 27, 2026 letter to the Court, Defendants expressly provided Jersey "never brought or raised the issue [as to Defendants' failure to answer discovery] until April 22, 2026."  (ECF 108, at p. 2. )

{00135186 - 1}

Honorable Justin T. Quinn, U.S.M.J.
May 15, 2026
Page 3

## DEFENDANTS' DISCOVERY DEFICIENCIES

As Your Honor is aware, this is a garden-variety landlord-tenant dispute. Jersey commenced this action alleging that Defendants materially breached certain provisions of a written lease (the "Lease"). Defendants counter-claimed alleging that Jersey materially breached the Lease, as well as various fraud claims. Pertinent Lease Articles, for purposes of this conference include the following:

- 2.5, which prohibits Defendants from storing any inventory in the premises until after the Lease commences; (ECF 17-3, at p. 10)

- 6.01, which mandated Defendants post $300,000 as an "Additional Security Deposit" within two months after the Lease's commencement date and that a failure to timely deliver would constitute an uncurable default; (id., at p. 17)

- 15.02 and 15.04, which obligated Defendants to obtain and maintain liability insurance and rental insurance; (id., at p. 29)

- 16.03, which capped Defendants' right to any rent abatement to proceeds received by Landlord from Tenant's loss of income insurance and; (id., at p. 31)

- 20, which contains a broad waiver of claims by Tenant (id., at p. 38).

As additional background, the premises consists of approximately 200,000 square feet of warehouse space. Prior to leasing this space, Defendants and/or affiliated entities[2]

---

[2] Deposition testimony from Defendants' warehouse manager suggests that these all may be shell companies in an attempt to avoid liability.

{00135186 - 1}

Honorable Justin T. Quinn, U.S.M.J.
May 15, 2026
Page 4

occupied certain warehouses in Brooklyn, New York.  It was understood that Defendants required several months to transition from the Brooklyn location to the subject premises. Public records also demonstrate that Defendants' affiliates were evicted at or about the same time that Defendants were negotiating with Plaintiff on the Lease.  Finally, there is a dispute as to when the Lease commenced.  Jersey contends the Lease commenced in December 2023, while Defendants offer varying dates as to when they believed the Lease commenced.

A.  Defendants' Document Responses[3]

As a threshold matter, Defendants' responses run afoul of, among other things, FRCP 34 and Local Civil Rule 34.1.  There was no document production made contemporaneous with these responses, with Defendants only advising that "responsive documents will be forthcoming" to certain responses.[4]  Defendants produced documents on October 30, 2025 contemporaneous with their responses to Plaintiff PPREF/TP North Brunswick Industrial LLC's ("PPREF") document demands.  It is unknown which

---

[3] A copy of Defendants' objections & responses to Jersey's Document demands is attached as Exhibit C.  The responses are not verified by anyone with personal knowledge.

[4] Defendants' answer to the Demand for "documents requested in Plaintiff's interrogatories, or otherwise referred to, referenced by or consulted by Defendants in responding to same" was answered in this manner. (Ex. C, at p. 4.)  Defendants did not provide any documents to its interrogatory responses or even answer interrogatories until April 27, 2026.  This is patently improper. In re G-1 Holdings, Inc., 218 F.R.D. 428, 438 (D.N.J. 2003); FRCP 33(d).

Honorable Justin T. Quinn, U.S.M.J.
May 15, 2026
Page 5

documents, if any, that Defendants produced in connection to PPREF's demands were intended to cover Defendants' "forthcoming" production and Jersey would request that Defendants be more specific and identify, by bates stamp, which documents respond to which request (to the extent that these requests were, in fact, answered).

Turning to specific responses, Defendants refused to answer a number of demands because, according to Defendants, they "are not reasonably calculated to lead to the discovery of admissible evidence". Jersey believes these objections[5] and responses are meritless as follows:

- Demand Nos. 5 and 29 (Ex. C, at pp. 5-6, 13) seek documents and communications regarding the relationship either Defendants and the entities that occupied the Brooklyn warehouses. This request goes to, among other things, adequately defend as to damages being sought by Defendants;

- Demands No. 12-13 (id., at p. 8) seek documents and communications concerning the prior eviction against Defendants and/or their affiliates. This request goes to issues as to the Lease's commencement date, as well as Defendants' fraudulent inducement claims;

- Demands Nos. 16, 17, 18, 19, 20, 21, 22, 32, and 33[6] (id., at pp. 9-11, 14-15) seek documents and doc as to the amounts of insurance procured and

---

[5] Every demand by Plaintiff was met by objections to being "vague, ambiguous, confusing, overly broad, unduly burdensome, and irrelevant." Curiously, Defendants do not object on the basis of privilege to any demands, which would require a more robust response per Local Civil Rule 34.1.

[6] To add additional color to an issue, by email, dated October 31, 2024 at 5:06 pm, Mr. Treitel divulged that he did not procure all necessary insurance information by email to all counsel. This email also contained additional information that may be privileged and

Honorable Justin T. Quinn, U.S.M.J.
May 15, 2026
Page 6

maintained by Defendants during the pendency of the Lease and/or Defendants' occupancy of the subject premises, as well as all communications with Defendants' insurance brokers (who are defined as the "Broker" and "Alternative Broker"). While Defendants now argue that this is irrelevant, this was the subject of prior briefing, wherein Defendants represented to the Court that it made efforts to obtain some insurance policies, but was unable to get either of its insurance brokers to issue a policy due to purported pre-existing conditions. (ECF 46, at p. 11.) Accordingly, these documents and communications would also speak to Defendants' credibility;

- Demands Nos. 25 and 26 (Ex. C, at p. 12) seek documents and communications related to Defendants' efforts to obtain a bond in connection with the preliminary injunction sought by Defendants. Defendants were initially ordered to post a bond on or before October 16, 2024. (ECF 27 in the action with Docket No. 6175.) Defendants made three requests for extensions because, according to Defendants, they were unable to obtain a bond notwithstanding their best efforts. (ECF 24, 25, 30.) These documents and communications go to the issue of Defendants' credibility; and

- Demand No. 34 (Ex. C at pp. 15-16.) seeks documents related to all communications between Defendants and any third party other than those expressly sought in other demands concerning, among other things, the subject premises, Defendants' insurance policies, the Lease and related guaranty, and inventory within the subject premises. These communications would, undoubtedly, be relevant and should be produced.

B. Defendants' Interrogatory Answers[7]

---

was destroyed. Jersey requested a copy of the email redacted as to the privileged information, but with the insurance information intact. (Ex. B, at p. 11 ¶ 22.)

[7] A copy Defendants' objections and responses to Jersey's First Set of Interrogatories are attached as Exhibit D. These answers are not verified by anyone with first-hand knowledge.

{00135186 - 1}

Honorable Justin T. Quinn, U.S.M.J.
May 15, 2026
Page 7

Defendants' interrogatory answers, which Defendants admittedly failed to timely answer because of a purported oversight, are replete with typographical errors, misspellings, and otherwise indicate that they were drafted in slapdash format.  Many of these interrogatories refer generally to the depositions taken of Chaim Treitel and Sherzod Turdiev, without offering any specificity as to what is referenced.[8]  Moreover, these answers suffer from the same type of boilerplate and improper objections, along with refusal to answer plainly relevant requests.  Among the more egregious issues are:

- Interrogatory Nos. 4-5 (Ex. D at pp. 6-7), which asks for any party admissions and statements.  Rather than provide an answer, Defendants restate their grievance in purely conclusory terms;

- Interrogatory No. 8 (id., at pp. 8-9) requests information as to communications between Defendants, on one hand, and any other third party at to, among other topics, the subject premises, Defendants' insurance policies, the Lease and related guaranty, and inventory within the subject premises.  This is plainly relevant, and necessary to understand who other potential witnesses may be;

- Interrogatory Nos. 10, 17 and 21 (id., at pp. 9-10; 12-14) requests information concerning insurance that the Lease obligated Defendants to procure and maintain, as well as contracts or agreements as to insurance policies between Defendants and their insurance brokers.  This interrogatory is relevant as to insurance issues, as Defendants' purported damage claim, and all parties' claims as to breach of the Lease;

---

[8] Defendants did not order the transcripts of either of these depositions and, thus, cannot provide a citation to the page or line to the testimony that would purportedly answer the interrogatory in full.

Honorable Justin T. Quinn, U.S.M.J.
May 15, 2026
Page 8

- Interrogatory No. 11 (id., at p. 10) requests the facts underpinning Defendants' affirmative defenses. Defendants' affirmative answers are pleaded in purely conclusory fashion. Jersey is entitled to understand what, if any, facts Defendants intend to rely upon for their affirmative defenses;

- Interrogatory No. 12 (ibid.) asks for an itemized calculation of Defendants' purported damages. Defendants refer generally to the depositions taken, but otherwise refuse to answer. Jersey is entitled to obtain an intelligible calculation of the purported damages and not be forced to comb through deposition transcripts to try and divine this information;

- Interrogatory No. 14 (id. at p. 11) asks for the date that Defendants first placed inventory into the Premises. The Lease provides that no inventory can be stored in the Premises until the commencement date. This answer is relevant as to the issue of the Lease's commencement date;

- Interrogatory No. 15 (ibid.) seeks the facts and circumstances as to Defendants' position that the commencement date was any date other than December 2023. Rather than provide a specific answer, Defendants' offer a general overview of its allegations. Moreover, Defendants do not even advise the date that Defendants believe the Lease commenced. This information goes to issues at the heart of this case and should be answered.

- Interrogatory No. 16 (id., at p. 12) asks for a schedule of all payments made due to Defendants' purported inability to utilize the Premises. Defendants simply advise that the payments were produced, but do not provide a specific reference in violation of FRCP 33(d). Additionally, Defendants have, to date, not provided documents sufficient to identify all the information sought by this interrogatory (including but not limited to, the identify of parties who remitted or received renumeration or the location of space purportedly utilized by Defendants); and

- Interrogatory Nos. 18-19 (id., at pp. 12-13) seeks information as to Defendants' refusal to post the Additional Security Deposit and understanding as to why that does not constitute an uncurable default under the Lease (as per Article 6.01). Defendants offer vague and evasive

{00135186 - 1}

Honorable Justin T. Quinn, U.S.M.J.
May 15, 2026
Page 9

answers, but do not provide the actual facts that Defendants rely upon. Moreover, Defendants advise that they are awaiting a Court determination as to ascertain the "correct time to post the Additional Security Deposit." Defendants do not have a claim for reformation of the Lease. Accordingly, these answers are non-responsive to the interrogatories posed.

Jersey respectfully requests a conference with the Court to address the deficiencies outlined herein.

Thank you for your attention to this matter.

Respectfully submitted,

Jonathan A. Ozarow

Encls.

cc:      Counsel of Record (via PACER)

{00135186 - 1}